# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID ANTHONY MIER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-4299** |
| **WOOD TOWING, L.L.C., ET AL.** | **SECTION: "S" (5)** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, David Anthony Mier, was a seaman and a member of the crew of the M/V HAROLD ANCAR, a vessel owned and operated by plaintiff's employer, Wood Towing, L.L.C. ("Wood Towing"). On September 29, 2007, he slipped and fell in a slippery substance on a barge owned by ARTCO, and landed on a hatch cover. Plaintiff filed suit against Wood Towing, and others, alleging that the M/V HAROLD ANCAR and the ARTCO barge were unseaworthy; that his injuries were caused by defendants' negligence; and that he is entitled to maintenance and cure. The claims were bifurcated, and after a trial of plaintiff's unseaworthiness and negligence claims, the court denied the claims, leaving only plaintiff's maintenance and cure claims to be tried. The court must determine whether the claimed medical expenses were necessary and arose out of the injury, and when plaintiff reached or will reach maximum medical improvement. The court must also determine whether the plaintiff is entitled to maintenance, and if so what amount is appropriate to compensate plaintiff.

Plaintiff claims that he is entitled to an award of maintenance and cure because he was a seaman who was injured in the service of the vessel. On January 28, 2010, the issue of maintenance and cure was tried as a bench trial, and memoranda supporting the parties' respective positions were submitted to the court.

**1.      Maintenance and Cure**

"Maintenance and cure is an ancient duty imposed upon a shipowner to provide for a seaman who becomes ill or injured during his service to the ship." Silmon v. Can Do. II, Inc., 89 F.3d 240, 242 (5th Cir.1996). Maintenance is a subsistence allowance intended to cover the reasonable costs a seaman incurs for his food and lodging during the period of his illness. See Guevara v. Mar. Overseas Corp., 59 F.3d 1496, 1499 (5th Cir. 1995), abrogated on other grounds, Atl. Sounding Co., Inc. v. Townsend, 129 S.Ct. 2561 (2009); THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6-32, at 358 (2d ed. 1994). Cure is an employer's obligation to pay for the medical care of the sick or injured seaman. See Guevara, 59 F.3d at 1499; THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6-32, at 361 (2d ed. 1994). "The right terminates only when maximum cure has been obtained." Bertram v. Freeport McMoran, Inc., 35 F.3d 1008, 1012 (5th Cir.1994) (internal quotation and citation omitted). "Maximum cure is achieved when it is probable that further treatment will result in no betterment of the seaman's condition." Springborn v. American Commercial Barge Lines, Inc., 767 F.2d 89, 95 (5th Cir.1985). It is proper to declare maximum cure if the condition is incurable or if further treatment will only relieve pain and suffering. See Pelotto v. L & N Towing Co., 604 F.2d 396, 404 (5th Cir.1979).

"The Supreme Court has long recognized the importance of these remedies . . . and has declared that the doctrines of maintenance and cure are to be liberally construed to benefit the seaman." Cooper v. Diamond M Co., 799 F.2d 176, 179 (5th Cir. 1986) (quoting Caufield v. AC&D Marine, Inc., 633 F.2d 1129, 1132 (5th Cir. 1981)). Ambiguities or doubts regarding the entitlement to maintenance and cure are resolved in the seaman's favor. Id. (citing Vaughan v. Atkinson, 82 S.Ct. 997, 1000 (1962)). The duty is implied in maritime employment contracts and is not premised on the fault or negligence of the shipowner. Silmon, 89 F.3d at 242.

When an employer received a claim for maintenance and cure, it is entitled to investigate and require corroboration of the claim before making payments. MNM Boats, Inc., v. Johnson, 248 F.3d 1139 (5 th Cir. 2001) (citing Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir. 1995), abrogated on other grounds, Guevara, 59 F.3d 1496). If the employer, after conducting the investigation, unreasonably refuses to pay maintenance and cure, it is liable for maintenance and cure and also compensatory damages. Id. Further, if the employer has shown callousness and indifference to, or willful and wanton disregard for, the seaman's injuries, it is liable for punitive damages and attorneys' fees. Id.; see also Atl. Sounding, 129 S.Ct. at 2575.

**2.    Cure and Maximum Medical Improvement**

On September 29, 2007, plaintiff slipped and fell in a slippery substance while working as a deckhand aboard a barge owned by ARTCO. Plaintiff was in the process of tightening a winch when he fell. Plaintiff landed on his back on a manhole cover.

It is undisputed that the plaintiff was a seaman who was injured in the service of the vessel, and is therefore entitled to cure. Under the general maritime law, a seaman is entitled to receive

3

proper medical treatment and care, and the employer has a duty to provide such care up until the point that "it is probable that further treatment will result in no betterment of the claimant's condition." Boudreaux v. United States, 280 F.3d 461, 468 (5th Cir. 2002). Whether an operation will improve an individual's condition or whether an individual has reached the point of maximum medical improvement is a medical question. See Rashidi v. Am. President Lines, 96 F.3d 124, 128 (5th Cir. 1996) (citing Breese v. AWI, Inc., 823 F.2d 100, 104 (5th Cir. 1987)).

After the accident, plaintiff was under the care of an orthopedic surgeon, Dr. Earl Rozas. On the day of the accident, Dr. Rozas noted that plaintiff had two parallel bruises approximately three inches in length on his left rib cage, corresponding to the markings on the hatch cover, and that the area was very tender. Dr. Rozas took x-rays of the rib cage. Over the next month, Dr. Rozas prescribed to plaintiff some medications and physical therapy. Also, on October 31, 2007, Dr. Rozas performed a second x-ray of the rib cage. Dr. Rozas released plaintiff to work on November 19, 2007. Dr. Rozas did not take an x-ray, magnetic resonance imaging, or computed tomography scan of plaintiff's back.

On November 1, 2007, plaintiff consulted another orthopedic surgeon, Dr. Kenneth Adatto. Dr. Adatto ordered a magnetic resonance imaging of plaintiff's lumbar spine. The test was performed on November 15, 2007, and revealed the plaintiff had disc narrowing and disc bulging at L2-3, L4-5, and L5-S1, with disc dehydration at L2-3 and, L5-S1. On January 4, 2008, plaintiff underwent a computed tomography scan of the lower lumbar spine, and the results were abnormal at the L5-S1 level. Thereafter, plaintiff underwent a discogram, which confirmed that plaintiff had abnormal morphology at the L5-S1 level. As a result, Dr. Adatto recommended that plaintiff

4

undergo an anterior lumbar discectomy and fusion at L5-S1. The surgery was performed on January 20, 2010.

Plaintiff claims that he is entitled to $83,723.44 in outstanding medical expenses, most of which are charges arising from plaintiff's January 20, 2010, back surgery. Plaintiff claims that all of the outstanding medical expenses were necessary expenses that arose out of the injury he sustained while in the service of Wood Towing's vessel. Wood Towing contends that the surgery was not necessary and that plaintiff reached maximum medical improvement on November 19, 2007, when he was released back to work by Dr. Rozas.

Prior to the surgery, Wood Towing requested that plaintiff be examined by another orthopedic surgeon, Dr. Gordon Nutik. After examining plaintiff, and reviewing his medical records, Dr. Nutik opined that an anterior lumbar fusion at L5-S1 was reasonable. However, Dr. Nutik later changed his opinion after viewing surveillance videos that depicted plaintiff performing actions that he purportedly could not perform.

The court has reviewed the surveillance videos. Of particular interest are those segments of the tapes that depict the photographs that were submitted as illustrative of the Wood Towing's position that plaintiff was able to perform tasks that are inconsistent with his complaints regarding his back pain.

Specifically, plaintiff's carrying a sheet of plywood shows he was careful in handling the plywood so that the tail gate of the truck supported the weight as he pushed the board into the truck. Plaintiff's driving a stake into the ground does not demonstrate strain on his part as he uses a hammer to hit the stake and drive it a few inches into the ground. His handling the box shows it was

not a heavy load as he effortlessly changed the position of the box once it was in the truck. Also, the handling of the small table by two men is no indication that plaintiff was engaging in lifting activity that was inconsistent with his claimed injury. Basically, the court is unpursuaded by the surveillance videos that plaintiff's surgery was unnecessary or that he had reached maximum medical improvement as of the dates that the videos were filmed. Viewing the cited instances in the context in which they occurred, the videos have no probative value.

The court finds that all of the outstanding medical expenses were reasonable, necessary, and resulted from plaintiff's September 29, 2007, accident. The plaintiff is awarded $83,723.44 in outstanding medical expenses.[1] Further, the court finds that plaintiff will reach maximum medical improvement in twelve to eighteen months from the date of the trial, based upon Dr. Adatto's testimony that the normal recovery period for plaintiff's surgery is twelve to eighteen months.

## 3. Plaintiff's Entitlement to Maintenance

Wood Towing argues that plaintiff is not entitled to maintenance because plaintiff was a "commuter seaman" who was not provided with food or lodging on the vessel, but returned home at the end of the day and provided his own meals. Wood Towing contends that the purpose of maintenance is to furnish an injured seaman with the food and lodging that he would have received aboard the vessel and that plaintiff is not entitled to such compensation because he did not receive food or lodging from the vessel.

---

[1] Wood Towing argues that the surgical expenses were not reasonable because plaintiff's counsel admitted that the doctor charged more to the attorneys who paid for the surgery than he would have charge Wood Towing. However, Wood Towing did not offer any evidence as to what the difference would have been. Without such proof, the court cannot determine that the actual charges were unreasonable. See Caulfield v. AC&D Marine. Inc., 633 F.2d 1129 (5th Cir. 1981).

In Weiss v. Central R.R. Co. of New Jersey, 235 F.2d 309, 312-13 (2nd Cir. 1956), the United States Court of Appeals for the Second Circuit held that a ferry boat deckhand who slept at home and ate his breakfast and dinner there was entitled to maintenance and cure. In so holding, the court stated that knew of "no authority . . . for holding that a seaman is not entitled to the traditional privileges of his status merely because his voyages are short, because he sleeps ashore, or for other reasons his lot is more pleasant than that of most of his brethren." Id. at 313. Further, in Delaware River & Bay Authority v. Kopacz, 584 F.3d 622, 628 (3rd Cir. 2009), the United States Court of Appeals for the Third Circuit held that "commuter seamen" are entitled to the same rights to maintence as seamen who are provided food and lodging aboard the vessel. Other courts have also held that seamen who receive no food and lodging from their employer are entitled to maintenance. See Williams v. Western Pac. Dredging Corp., 441 F.2d 65, 66 (9th Cir. 1971); George v. Chesapeake & Ohio Ry. Co., 348 F.Supp. 283, 284 (E.D. Va. 1972); Hudspeth v. Atlantic & Gulf Stevedores, Inc., 266 F.Supp. 937 (E.D. La. 1967) (J. Rubin). Therefore, plaintiff is entitled to maintenance.

**4.     Amount of Maintenance**

To recover maintenance, the seaman plaintiff must produce "evidence to the court that is sufficient to provide an evidentiary basis for the court to estimate his actual costs." Hall v. Noble Drilling (U.S.) Inc., 242 F.3d 582, 590 (5th Cir. 2001). If the seaman has incurred living expenses, he is entitled to the reasonable cost of food and lodging. Id. at 587. "A seaman's burden of production in establishing the value of maintenance is feather light: his own testimony as to reasonable cost of room and board in the community where he is living is sufficient to support an

7

award." Yelverton v. Mobile Labs., 782 F.2d 555, 558 (5th Cir. 1986) (citing Curry v. Fluor Drilling Services, Inc., 715 F.2d 893 (5th Cir. 1983). Lodging includes expenses "necessary to the provision of habitable housing," such as heat, electricity, home insurance, and real estate taxes. Hall, 242 F.3d at 587 n. 17 (citing Gillikin v. United States, 764 F.Supp. 270, 273 (E.D.N.Y. 1991)).

The court's determination of the amount of the maintenance award involves three steps:

> First, the court must estimate two amounts: the plaintiff seaman's actual cost of food and lodging; and the reasonable cost of food and lodging for a single seaman in the locality of the plaintiff. In determining the reasonable cost of food and lodging, the court may consider evidence in the form of the seaman's actual costs, evidence of reasonable costs in the locality or region, union contracts stipulating a rate of maintenance or per diem payments for shoreside food or lodging while in the service of the vessel, and maintenance rates awarded in other cases for seamen in the same region. A seaman need not present evidence of the reasonable rate; a court may take judicial notice of the prevailing rate in the district.
>
> Second, the court must compare the seaman's actual expenses to reasonable expenses. If the actual expenses exceed reasonable expenses, the court should award reasonable expenses. Otherwise the court should award actual expenses. Thus the general rule is that seamen are entitled to maintenance in the amount of their actual expenses on food and lodging up to the reasonable amount for their locality.
>
> Third, there is one exception to this rule that the court must consider. If the court concludes that the plaintiff's actual expenses were inadequate to provide him with reasonable food and lodging, the plaintiff is entitled to the amount that the court has determined is the reasonable cost of food and lodging.

Hall, 242 F.3d at 591 (internal citations omitted).

Plaintiff presented evidence of his food and lodging expenses. Plaintiff and his father testified that at the time of the accident, September 29, 2007, plaintiff was renting his father's house

8

in Waggaman, Louisiana, and that plaintiff moved out at the beginning of May 2009. Plaintiff's average monthly expenses were as follows: $750 for rent; $500 for groceries, $126.17 for electricity, $44.94 for gas; $20.00 for water. Plaintiff's total expenses for those nineteen months were $27,381.09

Plaintiff testified that from the beginning of May 2009 to the beginning of November 2009, he lived him Folsom, Louisiana. His average monthly expenses for those six months were as follows: $650 for rent; $500 for groceries; and $120.32 for electricity. His total expense for this time were $7,621.92.

Plaintiff testified that from the beginning of November 2009 through the trial date, January 28, 2010, he lived with his aunt in Mount Herman, Louisiana. His average monthly expense for those three months were as follows: $300.00 for rent, $500.00 for groceries, and $82.50 for electricity. His total expense for this time were $2,647.50.

Plaintiff claims that his total maintence through the date of the trial has been $37,650.51. The accident occurred on September 29, 2007 and the maintenance and cure trial was held 853 days later, on January 28, 2010. Thus, plaintiff claims that his maintenance is $44.14 per day.

There was no evidence presented regarding the reasonable cost of food and lodging for a single seaman in the locality. The plaintiff offered testimony as to his actual expenses. There was no evidence offered regarding the reasonable expense for food and lodging in the area. However, the court may take judicial notice of the prevailing maintenance rate in the district.

In <u>Harrison v. Diamond Offshore Drilling, Inc.</u>, 2008 WL 708076 (E.D. La. 3/6/2008), the plaintiff presented evidence that his actual food and lodging expense totaled $46.44 per day. The

court noted that the parties did not present any evidence regarding the reasonable amount of maintenance in the locality. The court, taking judicial notice of the prevailing rate, examined recent maintenance awards, and found that $37.00 per day was reasonable. See id. (citing Hall, 242 F.3d at 591, 592 n. 45 (upholding district court's finding that maintenance raters of $30.50 and $31.50 were reasonable amounts for single seamen and noting that a $15 per day award in 1978 is equivalent to $38.35 in 1999 dollars); Nichols v. Weeks Marine, ,Inc., 513 F.Supp.2d 627, 639 (E.D. La. 2007) (finding that a maintenance rate of $30.00 per day is reasonable); Atlantic Sounding Co. v. Curette, 2006 WL 1560793, at *3 (E.D. La. 5/16/2006) (finding maintenance rate of $30.00 per day reasonable); Lodrigue v. Delta Towing, L.L.C., 2003 WL 22999425, at *11 (E.D. La. 12/19/2003) (finding $31.00 to be reasonable)). The Harrison court noted that the rate of $31.50 per day recognized as reasonable in Hall in 2001 would be roughly equivalent to $38.00 per day in 2008. The average rate of inflation from February 2001[2] to January 2010[3] was 23.26%.[4] Therefore, the $31.50 per day recognized as reasonable in Hall in 2001 would be roughly equivalent to $38.83 per day in 2010.

Plaintiff's actual food and lodging expense were $44.14 per day. A review of the jurisprudence shows that approximately $38.83 per day is the prevailing maintenance rate in the district. The court finds that a maintenance award of $40.00 per day is reasonable and appropriate

---

[2] The United States Court of Appeals' opinion in Hall v. Noble Drilling (U.S.) Inc., 242 F.3d 582, 590 (5th Cir. 2001) is dated February 14, 2001.

[3] The maintenance and cure trial in this matter was held on January 28, 2010.

[4] http://inflationdata.com.

in this case. As of the date of the maintenance and cure trial, plaintiff was entitled to $34,120.00 in maintenance, and Wood Towing had paid plaintiff $16,760.00 in maintenance. Therefore, plaintiff is awarded $17,360.00 for outstanding maintenance.

As stated above, Dr. Adatto testified that the recovery time for plaintiff's surgery is about twelve to eighteen months. The court finds that plaintiff has not reached maximum medical improvement, but likely will do so within twelve to eighteen months of the January 20, 2010 surgery. Therefore, plaintiff is entitled to receive maintenance payments of $40.00 per day from Wood Towing until he reaches maximum medical improvement.

**5.     Compensatory and Punitive Damages**

Plaintiff argues that he is entitled to compensatory and punitive damages for Wood Towing's failure to timely pay maintenance and cure. After receiving a claim for maintenance and cure, a shipowner may investigate and require corroboration of the claim before commencing payments. See McWilliams v. Texaco, Inc., 781 F.2d 514, 518-20 (5th Cir. 1986). If the shipowner unreasonably rejects the claim after investigating it, he is liable for compensatory damages. Gaspard v. Taylor Diving & Salvage Co., 649 F.2d 372, 374 n. 3 (5th Cir. 1981). Further, if the shipowner's rejection of a maintenance and cure claim is arbitrary and capricious, the shipowner is liable for punitive damages. Atl. Sounding, 129 S.Ct. at 2579.

The court finds that Wood Towing did not unreasonably reject plaintiff's claim, nor were its actions regarding plaintiff's maintenance and cure claim arbitrary and capricious. Wood Towing provided plaintiff with initial medical care by sending him to Dr. Rozas. Wood Towing then relied upon Dr. Rozas' declaration that plaintiff reached maximum medical improvement on November

11

19, 2007. Such reliance was reasonable under the circumstances because plaintiff had retained counsel and was sent to Dr. Adatto by his counsel. Wood Towing was entitled to investigate Dr. Adatto's diagnosis.

Moreover, plaintiff began working for Wood Towing on September 27, 2007, and was injured two days later, on September 29, 2007. Plaintiff has a very negative work history, having held twenty-three jobs from the time he was eighteen years old until the date of the accident, which occurred when he was twenty-three years old. Plaintiff untruthfully answered several questions on his job application with Wood Towing relative to having a high school diploma; a criminal conviction for possession of marijuana; a pervious firing for drug use; and sustaining a prior work related injury. Wood Towing had good reason to question plaintiff's veracity, and conducted a reasonable inquiry into plaintiff's injury. Therefore, the court finds that plaintiff is not entitled to an award of compensatory or punitive damages for Wood Towing's purported delay in providing maintenance and cure.

**6.     Pre-Judgment Interest**

The United States Court of Appeals for the Fifth Circuit has stated that "[p]rejudgment interest is compensation allowed by law as additional damages for lost use of money due as damages during the lapse of time between the accrual of the claim and the date of judgment. Jauch v. Nautical Servs., Inc., 470 F.3d 207, 214-15 (5th Cir. 2006). "[I]n maritime cases the award of prejudgment interest is the rule, rather than the exception, and the trial court has discretion to deny prejudgment interest only where peculiar circumstances would make such an award inequitable." Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp., 71 F.3d 198, 204 (5th Cir. 1995).

12

"Peculiar circumstances may be found where plaintiff improperly delayed resolution of the action, where a genuine dispute over a good faith claim exists in a mutual fault setting, where some equitable doctrine cautions against the award, or where the damages award was substantially less than the amount claimed by the plaintiff. Reeland Tubing, Inc. V. M/V CHAD G, 794 F.2d 1026, 1028 (5th Cir. 1986) (citing United States v. Cent. Gulf Lines, Inc., 747 F.2d 315, 320 (5th Cir. 1984); Inland Oil & Transport Co., 696 F.2d 321, 327-28 (5th Cir. 1983); Noritake Co., Inc. V. M/V HELLENIC CHAMPION, 627 F.2d 724, 728-29 n. 3 (5th Cir. 1980)). Prejudgment interest is generally awarded from the date of the loss. Id. (citing Platoro Ltd., Inc. v. Unidentified Remains, Etc., 695 F.2d 893, 906-07 (5th Cir. 1983) cert. denied, 104 S.Ct. 77 (1983); King Fisher Marine Serv., Inc. v. NP Sunbonnet, 724 F.2d 1181, 1187 (5th Cir. 1984)).

The court finds that there are no "peculiar circumstance" present in this matter that preclude the award of pre-judgment interest. Therefore, plaintiff is awarded pre-judgment interest on his outstanding maintenance award of $17,360.00 from September 29, 2007, until the date of this judgment, and on his cure award of $83,723.44, from the date of judicial demand to the date of this judgment.

## CONCLUSION

On the basis of the above Findings of Fact and Conclusions of Law, the court finds that the plaintiff is entitled to maintenance and cure. However, Wood Towing is not liable for compensatory or punitive damages for willful or arbitrary and capricious denial of maintenance and cure. Accordingly, the plaintiff is entitled to recover the following damages from Wood Towing:

(1) Outstanding maintence in the amount of $17,360.00, with prejudgment interest from the September 29, 2007 until the date of this judgment.

(2) Continued maintenance payments of $40.00 per day until he reaches maximum medical improvement.

(3) Outstanding cure of $83,723.44, with prejudgment interest from the date of judicial demand until the date of this judgment.

New Orleans, Louisiana, this  28th  day of May, 2010.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**